**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Thomas Scott Wood, | No. CV-17-02330-PHX-DGC |
| Plaintiff, | **ORDER** |
| v. | |
| Provident Life and Accident Insurance Company, | |
| Defendant. | |

Plaintiff Thomas Wood, M.D., filed a complaint against Defendant Provident Life and Accident Insurance Company, alleging that it violated the parties' contract by withholding certain disability insurance benefits. Doc. 1-1 at 5-12.[1] Each party has moved for partial summary judgment on the cause of Plaintiff's disability. Docs. 46, 51. Plaintiff also asks the Court to reopen discovery (Doc. 51 at 8), and Defendant asks the Court to strike some of Plaintiff's evidence (Doc. 67 at 9-12). The motions are fully briefed and, unfortunately, the Court has no time available for oral argument before the month of July. Because the Court does not wish to delay resolution of these motions that long, and oral argument will not significantly aid the Court's decision, the Court issues this order without oral argument. Fed. R. Civ. P. 78(b); LRCiv 7.2(f). The Court will grant partial summary judgment to Plaintiff.

---

[1] Citations throughout this order are to page numbers placed at the top of each page by the Court's electronic filing system.

**I. Preliminary Issues.**

**A. Residual Disability and the Motion to Reopen Discovery.**

Defendant granted Plaintiff limited disability benefits after determining that he is totally disabled due to a "Sickness," as defined by the insurance policy. Doc. 52-3 at 3. Defendant seeks summary judgment on two issues: (1) whether Plaintiff is residually disabled, and (2) whether an "Injury" caused Plaintiff's disability. Doc. 46. Plaintiff contends that the Court should not consider the first issue. Doc. 51 at 5-8.

**1. Waiver.**

Plaintiff argues that Defendant waived the residual disability argument by not raising it as an affirmative defense. Doc. 51 at 5-6. The Court is not persuaded, however, that the argument is an affirmative defense. "An affirmative defense is a defense that does not seek to negate the elements of the plaintiff's claim, but instead provides a basis for avoiding liability even if the elements of the plaintiff's claims are met." S. Gensler, Federal Rules of Civil Procedure, Rules and Commentary to Rule 8 (2018) (citing cases). Plaintiff has the burden of proving that he was entitled to full disability benefits under the contract, something he cannot do if he fails to prove that he was unable to work. The residual disability argument negates an element of Plaintiff's claim, and is not an affirmative defense.

And even if the argument is an affirmative defense, the Ninth Circuit has held that affirmative defenses are not waived if they were unavailable when an answer was filed. *See Panaro v. City of N. Las Vegas*, 432 F.3d 949, 952 (9th Cir. 2005). Defendant plausibly demonstrates that it did not learn Plaintiff was still working until after it filed an answer and conducted discovery in this case. The Court declines to find waiver.

**2. Estoppel.**

Defendant's initial claim investigation concluded that Plaintiff was totally disabled. Doc. 52-2 at 2. Plaintiff contends that this initial finding precludes Defendant from now arguing that he is residually disabled. Doc. 51 at 6-7. Specifically, Plaintiff argues that an insurer cannot change the basis for its coverage decision during litigation

"if the insurer knew, or should have known of the additional basis for its decision." *Id.* at 6. The treatise Plaintiff cites acknowledges that the relevant law varies among the states. *See id.* (citing Steven Pitt et al., 14 Couch on Ins. § 198:54 (3d ed. 2017) (noting that "there is contrary authority")). Plaintiff appears to agree. *See* Doc. 73 at 5 (noting that "[a]t least some courts disagree" with the proposition that an insurer can change its disability determination in subsequent litigation). But Plaintiff does not cite, and the Court has not found, any controlling Arizona law on this issue.

And in any event, Plaintiff does not meet the standard he proposes. Plaintiff contends that Defendant knew or should have known that he continued to work at the time it made its findings of total disability in January and August 2016. Doc. 51 at 7. Plaintiff emphasizes that Defendant interviewed his treating physicians and reviewed voluminous records that included a single note that Plaintiff had "stopped working as much." *Id.* (citing Doc. 47-4 at 88). Defendant counters that Plaintiff impeded its initial disability investigation by misrepresenting whether he had returned to work after August 2015. Doc. 67 at 5. Specifically, Plaintiff's application for disability benefits indicated that he had not returned to work as an anesthesiologist. Doc. 47-2 at 26. Plaintiff also submitted monthly reports to Defendant starting in January 2016 in which he represented that he had neither returned to work nor "worked anywhere for pay, profit, or any other type of earnings." Doc. 68-1 at 19-35. Plaintiff now concedes that he performed some anesthesia procedures after his alleged onset of disability and continued to earn income for managing his business. Doc. 73 at 3; Doc. 52-4 ¶¶ 36, 40-42.

The Court concludes that a single treatment note indicating that Plaintiff had "stopped working as much" did not put Defendant on notice of the residual disability argument, especially in light of Plaintiff's repeated representations that he was not working. The doctrine of estoppel does not apply.

Plaintiff also claims that Defendant did not reveal the residual disability defense until January 26, 2018, when it filed its motion for summary judgment. Doc. 51 at 5; Doc. 73 at 4. But during the Court's pre-motion conference, Defendant stated its intent to

seek summary judgment on this ground. Court's Livenote Tr. (Jan. 9, 2018). Plaintiff's counsel acknowledged this argument and expressed his intention to oppose it. *Id.*[2]

### 3. Rule 56(d) Motion.

Plaintiff requests that the Court delay its ruling on residual disability until the parties can complete at least 90 days of discovery on the issue. Doc. 51 at 8. Rule 56(d) grants the Court discretion to defer or deny a motion for summary judgment in order to allow more time for discovery where the opposing party "shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition[.]" When making a Rule 56(d) determination, the Court should consider "whether the parties have diligently conducted discovery prior to the Rule 56(d) motion, whether they complied with the procedural requirements of the Rule, and whether further discovery would aid the party opposing summary judgment or merely delay the proceedings." *Roosevelt Irrigation Dist. v. Salt River Project Agric. Improvement and Power Dist.*, No. 2:10-CV-290-DAE (BGM), 2016 WL 3613278, at *2 (D. Ariz. Feb. 22 2016).

In this case, the parties do not dispute the diligence with which Plaintiff conducted discovery prior to making this Rule 56(d) motion. And the Court finds that any lack of preparation on the residual disability issue was reasonable in light of the narrow scope of the issues during the discovery period. Defendant's initial claim evaluation resulted in a finding that Plaintiff was totally disabled (Doc. 52-3 at 3), and the parties identified a single issue for the first phase of discovery and summary judgment briefing: whether a Sickness or an Injury caused the disability (Court's Livenote Tr. (Sept. 1, 2017)). This residual disability argument apparently was first revealed on January 9, four days after discovery had closed.

---

[2] Plaintiff makes two arguments for the first time in his reply brief: he disclosed the nature of his continued work early in the discovery process, and Defendant violated its discovery obligations with respect to this argument. Doc. 73 at 4-5. The Court will not consider arguments made for the first time in a reply brief. *Gadda v. State Bar of Cal.*, 511 F.3d 933, 937 n.2 (9th Cir. 2007).

Plaintiff also has complied with the procedural requirements of Rule 56(d) by submitting a declaration of counsel specifically stating the need for further fact discovery to adequately respond to Defendant's residual disability arguments. *See* Doc. 54-1. Plaintiff seeks to depose Defendant's representative regarding its "interpretation and application of the 'residual disability' provisions of the Policy." *Id.* ¶ 6. Counsel states that this information will support arguments that (1) Defendant has misapplied the Policy with respect to its "residual disability" provisions, and (2) Plaintiff's administrative work was so minimal that it is immaterial to the disability determination. *Id.* ¶ 7. The Court concludes that counsel describes with sufficient particularity the facts he expects to learn from the anticipated discovery and their value for summary judgment.

The Court cannot conclude that the additional discovery sought by Plaintiff will shed no light on the residual disability issue. *See Jones v. Blanas*, 393 F.3d 918, 930 (9th Cir. 2004); *Terrell v. Brewer*, 935 F.2d 1015, 1018 (9th Cir. 1991)). The Court will grant Plaintiff's Rule 56(d) motion and deny the summary judgment motions on the residual disability issue without prejudice to their refiling after additional discovery.

### B. Dr. Rovner's Expert Opinion.

Defendant contends that the timing of Dr. Robert Rovner's expert disclosure requires the Court to preclude his opinion for purposes of summary judgment. Doc. 67 at 10-11. Plaintiff counters that he disclosed Dr. Rovner's opinion before the Court's discovery deadline. Doc. 73 at 7-8.

The Court's case management order identifies January 5, 2018, as the deadline for the first phase of discovery. Doc. 14 ¶ 4. Defendant received Dr. Rovner's expert disclosure on January 2, 2018. Doc. 69-1 at 26-30. Defendant contends that it should have received this disclosure at least ten days earlier because Plaintiff received the expert disclosure on December 18, but did not mail it to Defendant until December 28. Doc. 67 at 10-11. Defendant also argues that the January 2 disclosure was inadequate insofar as it failed to include Dr. Rovner's prior testimony and fee schedule. *Id.* at 11. Plaintiff

supplemented his disclosure to include that material, but not until January 8. Doc. 69-1 at 32-34.

To be clear, Defendant does not request an opportunity to depose Dr. Rovner, take further expert discovery, or present a rebuttal opinion. Defendant asks only that the Court preclude Dr. Rovner's opinion on the central issues of this case because his disclosure arrived three days before the deadline. Doc. 67 at 12. The Court declines to do so. The Court set a short discovery schedule to precede summary judgment motions on a potentially dispositive issue, and did not put in place typical expert disclosure deadlines. Plaintiff's expert disclosure was made before the discovery deadline established in this shortened schedule. It would be unduly punitive to preclude an expert opinion that was disclosed within the discovery period. And as noted above, preclusion is the only relief Defendant seeks – it does not request further discovery or an opportunity to present a rebuttal expert opinion.

**C.    Declarations of Treating Physicians.**

Defendant asks the Court to strike the declarations of Drs. Edward Prince, Jon Obray, and Kade Huntsman. Doc. 67 at 9-12. This case is subject to the Mandatory Initial Discovery Pilot Project ("MIDP"). Doc. 14 ¶ 1. The MIDP requires that initial disclosures identify persons who "are likely to have discoverable information relevant to any party's claims or defenses, and provide a fair description of the nature of the information each such person is believed to possess." Gen. Order 17-08 ¶ B(1). The MIDP also requires parties to disclose any written statement "relevant to any party's claims or defenses . . . if it is in your possession, custody, or control." *Id.* ¶ B(2). If a party identifies supplemental information after its initial disclosure, that party must supplement its response "in a timely manner, but in any event no later than 30 days after the information is discovered by or revealed to the party." *Id.* ¶ A(8). "[F]ull and complete supplementation must occur by the [discovery] deadline." *Id.*

Plaintiff's initial disclosure identified Drs. Prince, Obray, and Huntsman as persons with "discoverable information regarding Plaintiff's injury, and his treatment of

Plaintiff's injury." Doc. 73-5 at 3; *see* Doc. 73-5 at 4-5. But Plaintiff did not disclose their declarations until the summary judgment briefing process. *See* Docs. 52-7, 52-8, 60-1, 67 at 9-11. Defendant asserts a violation of the MIDP and asks the Court to strike what it characterizes as "untimely" evidence. Doc. 67 at 9-11.

The Court finds no error. The MIDP requires timely disclosure of written statements in a party's "possession, custody, or control." Gen. Order 17-08 ¶ B(2). Each of the declarations was executed after the January 5, 2016, discovery deadline. *See* Doc. 52-7 (February 21, 2018, for Dr. Huntsman), 52-8 (February 23, 2018, for Dr. Obray), 60-1 (March 2, 2018, for Dr. Prince). And Plaintiff revealed each statement within 30 days of its execution. *See* Doc. 52-7 (2 days for Dr. Huntsman), 52-8 (same day for Dr. Obray), 60-1 (12 days for Dr. Prince).

Defendant next argues that each of the declarations contains impermissible opinion testimony that Plaintiff did not disclose pursuant to Rule 26(a)(2). Doc. 67 at 12. Disclosures under Rule 26(a)(2)(A) must include the identities of treating physicians who have not been specially employed to provide expert testimony in this case, but who will provide testimony under Federal Rules of Evidence 702, 703, or 705. A Rule 26(a)(2)(B) report is required for any opinion of such witnesses that was not developed in the course of their treatment. *See Goodman v. Staples the Office Super Store, LLC*, 644 F.3d 817, 826 (9th Cir. 2011). Thus, Plaintiff may not call any treating physician to render an expert opinion that was not developed in the course of treatment unless that opinion was set forth in a Rule 26(a)(2)(B) report. Plaintiff has not disclosed Rule 26(a)(2)(B) reports for Drs. Prince, Obray, or Huntsman. Their opinions must therefore be restricted to those developed in the course of their treatment of Plaintiff.

The Court concludes that some of the material in the three declarations constitutes opinion not developed in the course of Plaintiff's treatment. Specifically, much of the material appears to reflect *current* opinion of Plaintiff's condition and prognosis, not what the physician observed or concluded during the course of treatment. The following paragraphs constitute opinion testimony that required a report under Rule 26(a)(2)(B):

paragraphs 3, 6, 8, 9, and 10 of Dr. Huntsman's declaration; paragraphs 3 and 9 of Dr. Obray's declaration; and paragraphs 3, 6, 7, 8, 9, 10, 11, and 13 of Dr. Prince's declaration.

To avoid preclusion, Plaintiff has the burden of showing that his failure to comply with Rule 26(a)(2)(B) was substantially justified or harmless. Fed. R. Civ. P. 37(c)(1); *R & R Sails, Inc. v. Ins. Co. of Pa.*, 673 F.3d 1240, 1246 (9th Cir. 2012). Plaintiff acknowledges this rule, but makes no attempt to establish substantial justification or harmlessness. Doc. 73 at 7-8. The Court accordingly will not consider the impermissible opinion in the declarations of Drs. Prince, Obray, and Huntsman.

## II. Background.

Plaintiff is a licensed anesthesiologist who secured a disability insurance policy (the "Policy") with Defendant in 1991. *See* Doc. 47-2 at 7. The Policy entitles Plaintiff to disability benefits if he ever becomes totally or residually disabled. *See id.* at 7-8.

Plaintiff sought treatment for degenerative disc disease of the lumbar spine as early as December 2011 (Doc. 47-5 at 53-54), and of the cervical spine as early as April 2014 (Doc. 47-4 at 126). Plaintiff acknowledges that he struggled with back problems throughout his career, but asserts that until August 2015 he was always able to overcome the symptoms and perform his job. Doc. 52-5 at 22.

On August 18, 2015, Plaintiff treated a patient with anesthesia during a surgical procedure at Banner Page Medical Center. Doc. 47-3 at 21-22. After the surgeon completed the operation, Plaintiff helped nurses move the patient from the operating table to an adjacent hospital bed. *Id.* at 22. A nurse was positioned at the patient's feet, nurses were positioned on each side of the patient's body, and Plaintiff was positioned above the patient's head. *Id.* at 26. As a team, the group lifted the patient and slid her onto a hospital bed. *Id.* at 22. As an anesthesiologist, Plaintiff's primary responsibility was the stabilization of the patient's neck and airway. Doc. 47-5 at 18-19. The nurses positioned on either side of the patient do the "heavy lifting," but an anesthesiologist might bear some of the weight of the head and shoulders. *Id.* at 21-22. While holding the patient's

head and shoulders, Plaintiff lifted and pushed the patient with the nurses (the "lifting maneuver"). Doc. 47-3 at 27-28. During this routine maneuver that he had performed without incident thousands of times (*id.* at 28), Plaintiff suddenly experienced a flash of radiating pain in his spine (*id.* at 22). Nothing was unusual about the maneuver other than the pain that resulted. *Id.* at 28.

Plaintiff submitted a claim in September 2015 for disability benefits, alleging that he became totally disabled on August 17, 2015. Doc. 47-2 at 25-36.[3] Because Plaintiff was 61 years old in August 2015, the length of his disability insurance benefits depends on the cause of his disability. Doc. 47-2 at 7. The Policy defines the two categories of covered causes:

> **Injuries** means accidental bodily injuries occurring while your policy is in force.
>
> **Sickness** means sickness or disease which is first manifested while your policy is in force.

*Id.* at 10 (emphasis added). If an Injury causes total disability, Plaintiff receives benefits for the remainder of his life. *Id.* at 7. If a Sickness causes total disability, his benefits last for 48 months. *Id.* If an Injury and a Sickness jointly cause total disability, Plaintiff receives benefits for the remainder of his life. *Id.* at 12.

Defendant concluded that Plaintiff was totally disabled due to a Sickness – "chronic, degenerative spine disease that was exacerbated by the patient lifting event of August 18, 2015." Doc. 52-3 at 3; *see also* Doc. 52-2 at 2. This finding entitles Plaintiff to 48 months of disability benefits, which will expire on November 16, 2019. Docs. 52-2 at 2, 52-3 at 2. Plaintiff alleges that he was injured, and that Defendant wrongfully classified the cause of his total disability as a Sickness. Doc. 1-1 at 5-12.

---

[3] Plaintiff clarifies that the lifting maneuver may have occurred on August 18, not August 17. Doc. 47-3 at 21; Doc. 52-4 ¶ 26.

- 9 -

### III. Legal Standards.

A party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Summary judgment is appropriate if the evidence, viewed in the light most favorable to the nonmoving party, shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment is also appropriate against a party who "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. Only disputes over facts that might affect the outcome of the suit will preclude summary judgment, and the disputed evidence must be "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

No party contests that Arizona law applies to this case. Under Arizona law, undefined terms in insurance contracts are interpreted "according to their plain and ordinary meaning, and the policy's language should be examined from the viewpoint of one not trained in the law or in the insurance business." *Equity Income Partners, LP v. Chi. Title Ins. Co.*, 387 P.3d 1263, 1267 (Ariz. 2017) (internal quotation marks omitted). "If a term remains ambiguous after considering any underlying legislative policy, social goals, and the transaction as a whole, a court must construe it in favor of coverage, that is, against the insurer, given that the insurer is in the best position to prevent ambiguity in a standard form contract." *Id.*

### IV. Discussion.

The parties move for summary judgment on the cause of Plaintiff's disability. Docs. 46, 51. This requires the Court to address whether the lifting maneuver was (1) an accidental bodily injury that (2) caused Plaintiff's disability.

### A. Accidental Bodily Injury.

The Policy defines injury as an "accidental bodily injury" (Doc. 47-2 at 10), but it neither explains the meaning of "accidental bodily injury" nor limits its scope to injuries caused by accidental means (*see* Doc. 47-2 at 10; Doc. 52-11 at 6). For this reason, the Court must interpret the phrase according to its "plain and ordinary" meaning. *Equity Income Partners*, 387 P.3d at 1267.

#### 1. Bodily Injury.

Defendant contends that the lifting maneuver did not cause a "bodily injury" because it did not involve any physical force. Doc. 46 at 12-13 (citing *Cent. Nat'l Life Ins. Co. v. Peterson*, 529 P.2d 1213, 1217 (Ariz. Ct. App. 1975) ("An accidental bodily injury implies some degree of physical force, no matter how slight.")). But physical exertion on the job is sufficient force to cause a bodily injury. *Peterson*, 529 P.2d at 1217 ("The physical force in this case consisted of appellee's exertion in doing his job."). It is undisputed that the lifting maneuver involved a physical exertion in the course of Plaintiff's work. However slight the force might have been, Defendant's physician consultant, Dr. Beavers, acknowledged that the maneuver applied force to Plaintiff's spine. Doc. 52-10 at 5.

Defendant next contends that the lifting maneuver did not cause a "bodily injury" because there is no evidence of "any new lesions." Doc. 46 at 15. But Dr. Rovner opines that "it is not unusual for a patient's symptoms to change without there being a discernible change in the patient's anatomic or physiologic diagnostic measurements." Doc. 52-9 ¶ 6. Defendant cites no evidence to counter this opinion.[4]

Plaintiff presents evidence that his spinal pain, mobility, and function changed after the lifting maneuver. Doc. 52-4 ¶¶ 24, 27; Doc. 52-7 ¶ 7; Doc. 52-8 ¶¶ 5-6; Doc. 52-9 ¶ 7; Doc. 60-1 ¶ 5. Without a definition of "bodily injury" in the Policy, the

---

[4] Defendant also argues that Plaintiff did not suffer a bodily injury because there is no evidence that the lifting maneuver "had any lasting effect on Plaintiff beyond a temporary exacerbation of Plaintiff's already existing conditions." Doc. 46 at 15. This argument concerns causation, which is addressed below, and an issue not presently before the Court: whether Plaintiff is residually disabled.

- 11 -

Court concludes that the lifting maneuver resulted in a "bodily injury" within the plain and ordinary meaning of that phrase.

### 2. Accidental.

Defendant contends that the lifting maneuver was not accidental because it resulted from his intentional performance of "a routine maneuver [he] had done thousands of times before without incident." Doc. 46 at 12. Plaintiff concedes that his maneuver was intentional, but argues that the lifting maneuver was accidental insofar as it unintentionally triggered his disabling condition. Doc. 51 at 12-17.

"Arizona does not distinguish between 'accidental means' and 'accidental results.' An accident is an accident whether it be in the means or the results." *Peterson*, 529 P.2d at 1217. Thus, if Plaintiff's injury was accidental, it does not matter that the means – a routine lifting maneuver – was not an accident in the traditional sense.[5]

The Arizona Supreme Court confronted an analogous issue in *Malanga v. Royal Indemnity Co.*, 422 P.2d 704 (Ariz. 1967). The insurance contract covered "accidental bodily injuries," but did not define or limit the term "accidental." *Id.* at 706. The insured died after voluntarily consuming a lethal combination of alcohol and barbiturates, and the parties agreed that the insured did not intend to cause his own death. *Id.* at 705-06. The insurance company argued that the death "was not accidental because the means which caused it were voluntarily and intentionally employed by the deceased." *Id.* at 707. The Arizona Supreme Court disagreed:

> [A]n effect which was or should have been reasonably anticipated by an insured person to be the natural or probable result of his own voluntary acts is not accidental. Or to put it in the affirmative form, if the result is one which in the ordinary course of affairs would not be anticipated by a

---

[5] The *Peterson* court explained that this does not mean that every unexpected illness will constitute an accidental bodily injury, because such "[a]n accidental bodily injury implies some degree of physical force, no matter how slight." 529 P.2d at 1217. As noted above, this case involved physical force, even if slight. The Court notes that it has previously interpreted the word "accidental" when applied to the means by which an event is caused. *Stillwater Ins. Co. v. Dunn*, No. CV-14-01829-PHX-DGC, 2015 WL 1778349, at *5 (D. Ariz. Apr. 20, 2015). That definition is not helpful when, as here, the question is whether the result of the event is accidental.

- 12 -

reasonable person to flow from his own acts, it is accidental. The test is, what effect should the insured, as a reasonable man, expect from his own actions under the circumstances.

422 P.2d at 708 (quoting *Cal. State Life Ins. Co. v. Fuqua*, 10 P.2d 958, 960 (Ariz. 1932)). Applying this test, *Malanga* concluded that the death was accidental because it was unexpected. *Id.*

The Arizona Supreme Court subsequently replaced the "reasonable man" standard with that of the "average man" to "strike a balance between focusing exclusively on the insured and the subjective state of mind that cannot comprehend death and the artificial 'reasonable man' who would declare not an accident any daring, reckless, or foolhardy act." *Valley Dental Ass'n, P.C. v. Great-West Life Assurance Co.*, 842 P.2d 1340, 1343 (Ariz. Ct. App. 1992). The Arizona Supreme Court explained:

> One paying the premium for a policy which insures against 'death by accidental means' . . . intends to insure against the fortuitous, the unintentional, and the unexpected, that which happens through mishap, mischance or misjudgment. When he pays that premium month after month he does not intend that any act committed by him, no matter how daring, reckless or foolhardy, be adjudged by a court under 'reasonable man tests' or 'natural and probable consequence' standards to deprive his beneficiary of contractual rights arising out of his unintended and unexpected and, therefore, accidental death.

*Knight v. Metro. Life Ins. Co.*, 437 P.2d 416, 420 (Ariz. 1968). *Knight* requires courts to interpret "accidental" in light of "common speech and usage and the understanding of the average man." *Id.*

The question in this case therefore becomes what effect Plaintiff, as an average man, should have expected from his participation in the lifting maneuver. Plaintiff experienced sudden and unusual pain while engaged in a routine act he had performed thousands of times before. Defendant contends that an average man should have expected the resulting pain because "Dr. Prince had recommended activity modification" and Plaintiff was aware that his job aggravated his pain. Doc. 67 at 9. But Defendant

- 13 -

cites no evidence that Dr. Prince advised Plaintiff to avoid even routine activities. *See id.*[6] Nor does Defendant cite evidence that Plaintiff should have expected pain that was significantly different than what he previously had experienced. *See id.* Based on the undisputed facts, the Court concludes that no reasonable juror could find that an average man in Plaintiff's circumstances would have expected the debilitating pain that resulted from the routine maneuver. The Court accordingly concludes that the injury suffered from the lifting maneuver was accidental.

### 3. Public Policy.

The Court's interpretation of "accidental bodily injury" comports with Arizona's public policy to resolve ambiguities in favor of coverage. *Equity Income Partners*, 387 P.3d at 1267; *Knight*, 437 P.2d at 420; *Malanga*, 422 P.2d at 707. Defendant could have drafted its Policy to clearly define "injury," limit its liability to a disability caused solely by a specific kind of injury, or include an applicable exclusion. Doc. 47-2 at 11.[7] Defendant did none of these, and the Court concludes that Plaintiff's injury falls within the plain and ordinary meaning of "accidental bodily injury."

Defendant does not cure the ambiguity by relying on legislative policy, social goals, and the transaction as a whole. Absent compelling evidence that the Policy intended a particular definition of "accidental bodily injury," the Court must resolve the ambiguity in favor of the insured. *See Equity Income Partners*, 387 P.3d at 1269.

### B. Causation.

The Policy contemplates an award of benefits where injury and sickness combine to cause a disability:

---

[6] Defendant appears to cite an April 2014 treatment note in which Dr. Prince recommended that Plaintiff perform strengthening exercises, take anti-inflammatory medication, and consider "activity modification as much [as] possible." Doc. 47-5 at 8. Dr. Prince concluded that Plaintiff "may have to consider significant workplace changes" if his condition does not significantly improve. *Id.* Without similar citations elsewhere in the record, the Court concludes that this single recommendation was insufficient to put Plaintiff on notice that the routine lifting maneuver might result in disabling pain over one year later.

[7] The Policy's only exclusions are for acts of war and "normal pregnancy or childbirth." Doc. 47-2 at 11.

- 14 -

> The fact that a disability is caused by more than one Injury or Sickness or from both will not matter. We will pay benefits for the disability which provides the greater benefit.

Doc. 47-2 at 12. Thus, the Policy does not limit benefits to disabilities caused solely and independently by injuries. *Id.*

Defendant contends that Plaintiff's degenerative disc disease caused his disability, and that the lifting maneuver only exacerbated the preexisting condition. *See* Doc. 46 at 14-15. The record may support a finding that the lifting maneuver combined with Plaintiff's degenerative disc disease to cause his disability, but the Policy's language makes this point inconsequential. Even if the disease contributed to Plaintiff's disability, the issue the Court must resolve is whether the lifting maneuver was a cause of Plaintiff's disability.

The Arizona Supreme Court's decision in *Dickerson v. Hartford Accident & Indemnity Co.*, 105 P.2d 517 (Ariz. 1940), is instructive. *Dickerson* considered the case of an insured who injured his foot while changing a vehicle's tire. *Id.* at 518. The injury exacerbated the insured's gout, resulting in disability. *Id.* at 519. Relying on the preexisting gout, the insurer denied benefits because the policy only protected "against loss caused directly and exclusively by bodily injury sustained solely and independently of all other causes through accidental means." *Id.* at 518. The insured argued that the injury caused the gout, while the insurer claimed it only aggravated the gout. *Id.* at 519. *Dickerson* found sufficient evidence in the record for a jury to conclude that the injury caused the insured's disability:

> [T]he [gout], which presumably existed in the plaintiff, would probably have continued indefinitely without ever developing to a stage which the ordinary layman and the definitions above cited give the name of "disease," in the absence of some exciting cause, and was in all probability brought to that stage by the precipitating agency of the [injury].

*Id.* at 520.

The question in this case is less complicated. The insured's policy in *Dickerson* protected only against loss caused *solely* by bodily injury. *Id.* at 518. Plaintiff's policy awards benefits even where a disability results from multiple causes. The salient point is this: the undisputed facts demonstrate that Plaintiff's degenerative disc disease was not disabling before the lifting maneuver. Although Plaintiff experienced some symptoms of degenerative disc disease, he lived an active lifestyle without major limitations before August 2015. Doc. 52-4 ¶ 25. Dr. Rovner opines that people "can live with [degenerative disc disease] for long periods of time, including their entire life, without experiencing a material loss of mobility or functionality." Doc. 52-9 ¶ 5.

Even if the Court accepts Defendant's characterization of the lifting maneuver as an exacerbation of Plaintiff's degenerative disc disease, the maneuver was a contributing cause of Plaintiff's disability. Defendant managed his disease for years without succumbing to disability. *See* Doc. 52-4 ¶¶ 24-25; Doc. 52-5 at 22. Dr. Beavers opines that the disease would eventually have led to disability, but the record is devoid of any indication that Plaintiff would have become disabled in August 2015 had it not been for the lifting maneuver. Doc. 52-10 at 7. The Court concludes that the lifting maneuver was a cause of Plaintiff's disability when, with his degenerative disc disease, it resulted in a disabling condition.

## V. Motion to Seal.

Defendant filed a motion to seal one exhibit in support of its motion for summary judgment. Doc. 49. Because Defendant cites it in support of its residual disability argument, the Court will deny this motion as moot.

**IT IS ORDERED:**

1. Plaintiff's motion for partial summary judgment (Doc. 51) is **granted**. Plaintiff's disability was caused by an accidental bodily injury for purposes of the Policy. The Court will defer judgment on the residual disability issue.

2. Plaintiff's Rule 56(d) motion (Doc. 51) is **granted**. The parties may conduct discovery necessary to resolve the residual disability issue.
3. Defendant's motion for partial summary judgment (Doc. 46) is **denied**.
4. Defendant's motion to strike (Doc. 67) is **granted in part** and **denied in part** as set forth above.
5. Defendant's motion to seal (Doc. 49) is **denied** as moot.
6. The parties shall, on or before **June 12, 2018**, submit a jointly proposed schedule for the remainder of this case.

Dated this 29th day of May, 2018.

_____
David G. Campbell
United States District Judge