**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Thomas Scott Wood,<br><br>    Plaintiff,<br><br>v.<br><br>Provident Life and Accident Insurance Company,<br><br>    Defendant. | No. CV-17-02330-PHX-DGC<br><br>**ORDER** |

This case concerns Plaintiff Thomas Wood's allegation that Defendant Provident Life and Accident Insurance Company breached the parties' contract by withholding total disability insurance benefits. Doc. 1-1 at 5-12.[1] The Court previously found that Plaintiff suffered a "bodily injury," which would entitle him to life-long disability benefits if he is totally disabled. Doc. 77. The parties again move for summary judgment – Defendant on Plaintiff's breach of contract and bad faith claims and Plaintiff for declaratory judgment that he is totally disabled. Docs. 183, 185.[2] The motions are fully briefed, and oral argument will not aid the Court's decision. *See* Fed. R. Civ. P. 78(b); LRCiv 7.2(f). For the reasons set forth below, the Court will grant Defendant's motion to strike in part and deny the parties' motions for summary judgment.

---

[1] Citations are to page numbers placed at the top of each page by the Court's electronic filing system.

[2] Plaintiff also moves for permission under Rule 56(d) to conduct additional discovery on how Defendant determined he is residually disabled (Doc. 190 at 16), Defendant moves to strike certain portions of Plaintiff's response (Doc. 194), and Plaintiff moves for alternative relief (Doc. 197).

**I.      Preliminary Issues.**

**A.      Plaintiff's Rule 56(d) Motion.**

Rule 56(d) grants the Court discretion to defer or deny a motion for summary judgment in order to allow more time for discovery where the opposing party "shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition[.]" Fed. R. Civ. P. 56(d). Plaintiff previously sought to depose Defendant about its determination on the extent of Plaintiff's disability – whether Defendant found him to be totally or residually disabled. Doc. 108. Defendant objected to such discovery, and the Court allowed Defendant to satisfy its obligation "by producing a witness to testify that the company has not decided whether Plaintiff is residually disabled." Doc. 171. Defendant's Rule 30(b)(6) deponent testified that Defendant considers Plaintiff to be totally disabled, without elaborating on the basis for its determination. Doc. 186-4 at 21.

Plaintiff asks the Court to defer ruling on Defendant's motion for summary judgment so he can conduct further discovery on how Defendant has now reached the conclusion that Plaintiff is residually disabled. Doc. 190 at 17. In response, Defendant argues that the factual and legal bases for its assertion that Plaintiff is residually disabled are set forth in its motion for summary judgment. Doc. 194 at 11-12. The Court agrees. Defendant's motion describes in detail the grounds for its assertion that Plaintiff is residually disabled, citing evidence discovered during this litigation that Plaintiff has continued to work. *See* Doc. 183 at 9-15. Plaintiff has fully responded, and further discovery would merely delay the proceedings. The Court will deny the motion.

**B.      Defendant's Motion to Strike.**

"If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). On this basis, Defendant moves to strike various documents filed in Plaintiff's response to Defendant's summary judgment motion:

- the supplemental expert report of Charles M. Miller (Doc. 191-20);

- a printout of the Wikipedia page for Page, Arizona (Doc. 190-2);
- an "about Page" printout from the City of Page website (Doc. 190-3);
- emails between Plaintiff and other individuals at Banner Health discussing billing (Doc. 190-4 at 5-6);
- a calendar with abbreviations indicating when Plaintiff worked (Docs. 191-5, 192-1); and
- two academic articles about anesthesia (Doc. 190-5).

Doc. 194. The Court will consider each of these separately.

### 1. Supplemental Expert Report of Charles M. Miller.

Defendant argues that Plaintiff improperly relied on an untimely supplemental expert report from Charles Miller in his response to Defendant's motion. Doc. 200 at 2. The supplemental report was not created until July 5, 2019 (Doc. 191-20 at 7), long after the Court's expert report disclosure deadline of February 15, 2019, and rebuttal report deadline of March 29, 2019 (Doc. 85 at 2). Plaintiff does not dispute that his disclosure of Miller's supplemental report was untimely. Doc. 197 at 2-4.

Plaintiff argues that the late disclosure was substantially justified within the meaning of Rule 37(c)(1) because deposition transcripts on which the supplemental report relied – of Dr. Charles Sternbergh, Sara McKinnon, and Carolyn Daniels – were not available until May of 2019. But Plaintiff knew these depositions might contain information relevant to Miller's expert report and could have worked to schedule them earlier, or, if they could not be scheduled earlier, could have sought an extension of the expert deadline. Defendant sought and was granted an extension of its disclosure deadline. *See* Docs. 132, 134.

Plaintiff also knew that the Court required full and complete disclosures on the dates set forth in the Case Management Order and that supplements would only be allowed in extraordinary circumstances. As the Case Management Order stated:

> As stated in the Advisory Committee Notes to Rule 26 (1993 Amendments), expert reports under Rule 26(a)(2)(B) must set forth "the testimony the witness is expected to present during direct examination,

> together with the reasons therefor." Full and complete disclosures of such testimony are required on the dates set forth above; absent extraordinary circumstances, parties will not be permitted to supplement expert reports after these dates.

Doc. 85 at 3. The Case Management Order also stated that "[t]he parties are advised that the Court intends to enforce the deadlines set forth in this Order, and should plan their litigation activities accordingly." *Id.* at 5.

The fact discovery cut-off date was February 8, 2019. *Id.* at 2. Plaintiff waited until after this date had passed, and after the initial expert disclosure date had also passed, before seeking a limited extension of time to permit the depositions of Dr. Sternbergh, McKinnon, and Daniels. Plaintiff made clear in that motion that he was seeking to extend only the time for these depositions, not the expert disclosure schedule: "Except as set forth herein, Plaintiff is not seeking any extension or modification of any deadlines." Doc. 145 at 3. The Court granted the limited extension for these depositions, but made clear that other deadlines in Case Management Order were not affected: "All other terms of the Court's case management order (Doc. 85) remain in effect." Doc. 152.

Thus, Plaintiff knew that his expert disclosures were due in February and March, that they had to be full and complete, and that the Court would not allow a supplement report without extraordinary circumstances. And yet he let the expert deadlines pass without seeking an extension, and sought permission for three additional depositions (which the Court granted) without mentioning the expert disclosure deadlines. He then produced a supplemental expert report almost six months after the February disclosure deadline – purportedly because of the three depositions that were to have no other effect on the litigation schedule – without seeking leave of court. His delay was not substantially justified. He knew the Court's schedule, he was in control of discovery, and he failed to complete his expert work within that schedule or to seek an adjustment of it.

Aside from a general statement, Plaintiff does not explain, and the Court cannot see, how the late disclosure of Miller's supplemental report was harmless. Defendant had no chance to adequately respond to the late opinions and had already briefed its motion for

summary judgment by the time of the late disclosure. The Court will not reopen discovery at this late stage, as Plaintiff suggests, to cure the prejudice he caused. The Court will grant the motion to strike Miller's supplemental report.

**2. Wikipedia and City of Page Websites.**

Defendant moves to strike excerpts of the City of Page and Wikipedia websites as untimely. Doc. 194 at 11. Plaintiff states that the information contained in those excerpts "merely supports what the parties have acknowledged, namely, that the Page Hospital is a small hospital located in a remote area." Doc. 197 at 9. Defendant does not object to the use of this evidence for that limited purpose. Doc. 200 at 7. The Court will consider them only for the proposition that Page Hospital is small and located in a remote area. Defendant's motion will be denied as to the Wikipedia and City of Page websites.

**3. Banner Emails.**

Defendant moves to strike emails Plaintiff sent to and received from Banner Health employees in March and April 2019 regarding certain billing entries. Doc. 194 at 11. Plaintiff contends that these emails show that Defendant's allegation that Plaintiff has continued to work following his injury is erroneous and unreliable. Doc. 197 at 8. Plaintiff argues that the untimely disclosure is substantially justified and harmless. *Id.* at 9. The Court does not agree.

Plaintiff produced these emails in his response to Defendant's summary judgment motion filed on July 8, 2019. *See* Doc. 190-4 at 2-6. This is more than two months after the emails were created and after Defendant had briefed its motion for summary judgment. It is also well after the 30-day supplementation requirement of the Court's Mandatory Initial Discovery Pilot Project ("MIDP"). *See* General Order 17-08, ¶ A.8 ("A party must serve such supplemental responses in a timely manner, but in any event no later than 30 days after the information is discovered by or revealed to the party."). Plaintiff does not explain the reason for his delay. To cure any prejudice, Plaintiff recommends the Court permit Defendant to depose the author of the emails. But as already noted, the Court will

1  not reopen discovery at this late stage to cure prejudice caused by Plaintiff's delay. The
2  Court will grant the motion to strike the Banner emails.

### 4. The Calendar and Calendar Abbreviations.

Defendant moves to strike a calendar Plaintiff presumably created and abbreviations explaining entries on the calendar. Docs. 191-5, 192-1. The calendar specifies the dates on which Plaintiff worked from August 2015 to October 2018. Doc. 191-5. Plaintiff argues that the calendar and abbreviations are merely a "graphic" controverting statement of facts and contain no new information. Doc. 197 at 7.

The calendar and abbreviations were not timely disclosed under the MIDP or identified as a controverting statement of facts. Nor do they respond to Defendant's statement of facts as required by Local Rule 56.1(b). Plaintiff improperly uses these never-before-disclosed documents as evidence in his controverting statement of facts, and the Court will grant the motion to strike them.

### 5. Academic Articles.

Plaintiff provides two previously undisclosed academic articles about anesthesia. Doc. 190-5. Plaintiff appears to rely on the articles to counter Defendant's contention that Plaintiff can still work because he regularly travels. *See* Doc. 190 at 13 (the "rigors" of travelling are a far cry from the "substantial and material duties" of a full-time anesthesiologist, which include standing up to 10-12 hours a day, and lifting and moving heavy medical equipment and patients."). Plaintiff does not respond to Defendant's motion to strike these articles. *See* Doc. 197. They are untimely, and the Court will grant to the motion to strike them.

## II. Background.

Plaintiff Thomas Wood is a practicing anesthesiologist and sole owner of an anesthesia practice called Page Anesthesia Services, P.C. ("PAS"). Docs. 184-1 at 48, 82. In July 2005, he entered into an agreement with the hospital in Page, Arizona ("the Hospital") to provide coverage for anesthesia services as the Hospital needed. 184-2 at 23-31. This agreement was amended twice: in July 2006 to allow Plaintiff to perform pain

management services in the Hospital's pain clinic, and again in early 2007 for Plaintiff to become the exclusive provider of anesthesia services at the Hospital. Docs. 184-2 at 33-34, 19-22. Plaintiff also serves as the medical director for the Hospital's anesthesia department (*id.* at 20-21), the Facility Medical Director, otherwise known as the Chief Medical Officer ("CMO") (Docs. 184-2 at 36-45, 184-3 at 1-10), and as chair of the Hospital's Continuous Quality Improvement ("CQI") Committee (Doc. 184-1 at 57).

On August 17, 2015, Plaintiff treated a patient with anesthesia during a surgical procedure at the Hospital. Doc. 47-3 at 21-22. After the surgeon completed the operation, Plaintiff helped nurses move the patient from the operating table to an adjacent hospital bed. *Id.* at 22. During the maneuver, Plaintiff experienced a flash of radiating pain in his spine. *Id.* Nothing was unusual about the maneuver other than the pain that resulted. *Id.* at 28.

Plaintiff submitted a claim in September 2015 for disability benefits, alleging that he became totally disabled as a result of the maneuver. Doc. 47-2 at 25-36. Plaintiff had purchased his individual disability policy ("the Policy") in 1991 in case he "ever became unable to practice anesthesiology clinically." Doc. 186-1 ¶¶ 16-17. The Policy defines two categories of covered causes: (1) injuries, meaning "accidental bodily injuries occurring while your policy is in force," and (2) sickness, meaning "sickness or disease which is first manifested while your policy is in force." Doc. 184-1 at 13. The length of Plaintiff's disability insurance benefits depends, in part, on the cause of his disability. *Id.* at 10.

The parties previously moved for summary judgment on whether Plaintiff's disability was caused by injury or sickness. *See* Doc. 77. If an injury caused total disability, Plaintiff would receive benefits for life. Doc. 184-1 at 10. If a sickness caused total disability, his benefits would last 48 months. *Id.* Defendant concluded that Plaintiff was totally disabled, but due to a sickness rather than an injury – a "chronic, degenerative spine disease that was exacerbated by the patient lifting event of August 17, 2015." Doc. 52-3 at 3; *see also* Doc. 52-2 at 2. The Court held in favor of Plaintiff on this issue,

finding that the lifting maneuver resulted in "bodily injury" within the meaning of that phrase in the Policy and that the injury was accidental. Doc. 77 at 11-12, 14.

The parties now dispute whether Plaintiff is totally or residually disabled. If Plaintiff is totally disabled, he receives disability benefits for life; if residually disabled, he receives benefits until age 65. Doc. 184-1 at 10-11.

The Policy defines total disability as:

1. you are not able to perform the substantial and material duties of your occupation; and
2. you are receiving care by a Physician which is appropriate for the condition causing the disability. We will waive this requirement when continued care would be of no benefit to you.

Doc. 184-1 at 13.

The Policy defines residual disability as:

1. you are not able to do one or more of your substantial and material daily business duties or you are not able to do your usual daily business duties for as much time as it would normally take you to do them;
2. you have a Loss of Monthly Income in your occupation of at least 20%; and
3. you are receiving care by a Physician which is appropriate for the condition causing disability. We will waive this requirement when continued care would be of no benefit to you.

*Id.* at 17.

The Policy defines "occupation" as one "in which you are regularly engaged at the time you become disabled. If your occupation is limited to a recognized specialty within the scope of your degree or license, we will deem your specialty to be your occupation." *Id.* at 13.

On January 8, 2016, Defendant accepted Plaintiff's claim, declared him totally disabled, and has continuously paid him benefits under the Policy. Doc. 186-4 at 5, 21. Two years later, Defendant sent Plaintiff a reservation of rights letter, stating that it retains "the right to seek the return of any benefit that was not payable under the Policy" and that it was evaluating Plaintiff's medical restrictions and limitations. *Id.* ¶ 16.

Plaintiff claims that he is unable to perform any of his previous occupational duties and has not worked since his injury. Doc. 184 ¶ 67. Defendant contends that Plaintiff has continued working (Doc. 188 at 8), both as a clinical anesthesiologist and in administrative work as the Hospital's CMO, chair of the CQI, and director of the anesthesia department (Doc. 184 ¶¶ 30, 33-34, 40-41).

**III. Summary Judgment Standard.**

A party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Summary judgment is appropriate if the evidence, viewed in the light most favorable to the nonmoving party, shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment is also appropriate against a party who "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. Only disputes over facts that might affect the outcome of the suit will preclude summary judgment, and the disputed evidence must be "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

**Discussion.**

Counts one and two assert claims for breach of contract and bad faith, respectively. Doc. 1. Defendant moves for summary judgment on both claims (Doc. 183) and Plaintiff seeks a declaratory judgment that he is totally disabled (Doc. 185).

**A.   Defendant's Motion.**

**1.   Breach of Contract.**

No party disputes that Arizona law applies to this case. "[I]nterpretation of a contract is generally a matter of law," *Powell v. Washburn*, 125 P.3d 373, 375 (Ariz. 2006), but whether a party has breached the contract is a question for the trier of fact, *see Walter*

*v. F.J. Simmons*, 818 P.2d 214, 218-19 (Ariz. Ct. App. 1991); *Shiloh Custom Homes, Inc. v. Drywall*, No. 1 CA-CV 07-0677, 2009 WL 690600, at *7 (Ariz. Ct. App. March 17, 2009). A party breaches a contract when it "fail[s], without legal excuse, to perform any promise which forms the whole or part of a contract." *Snow v. Western Sav. & Loan Ass'n*, 730 P.2d 204, 210 (Ariz. 1986).

Defendant argues that it did not breach its contract with Plaintiff because Plaintiff is residually disabled and not entitled to total disability benefits. Doc. 183 at 1, 13-14; *see also* Doc. 194 at 9. Defendant contends that Plaintiff has continued to work after his injury, both as a clinical anesthesiologist and as an executive of the Hospital. Doc. 183 at 8-11.[3] In response, Plaintiff presents three arguments: Defendant's request for summary judgment will result in an advisory opinion that Plaintiff is residually disabled, Defendant's answer did not seek declaratory judgment and the Court therefore cannot enter summary judgment in Defendant's favor, and, on the merits, Plaintiff is totally disabled. Doc. 190 at 3.

Plaintiff argues that since Defendant previously found him to be totally disabled, the Court cannot now hold otherwise because to do so would result in an advisory opinion. *Id.* at 2. This is not correct. An opinion is advisory if it does not "resolve a real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." *Preiser v. Newkirk*, 422 U.S. 395, 401 (1975) (quotation marks and citations omitted). Plaintiff claims that Defendant breached the Policy by denying his claim for total disability benefits. The Court can enter summary judgment on this claim if it finds that he is not totally disabled. Such a ruling would not be advisory. It would resolve an issue presented by Plaintiff himself. Nor would it be an opinion based "upon a hypothetical state of facts"; it would resolve a "real and substantial controversy" between the parties. *Preiser*, 422 U.S. at 401.[4]

---

[3] Defendant also appears to imply that Plaintiff is not totally disabled because of his ability to travel regularly. Doc. 183 at 11-12. The Policy does not require Plaintiff to be unable to travel to be entitled to benefits. *See* Doc. 184-1 at 5-26.

[4] Plaintiff cites a number of cases in support of his advisory opinion argument.

Plaintiff's second argument that Defendant failed to seek declaratory judgment in its answer is likewise unconvincing. That fact has no bearing on the Court's ability to enter summary judgment on Plaintiff's claims.

Finally, Plaintiff argues that "the facts and circumstances surrounding Plaintiff's disability entitle him to receive the benefits associated with a 'total disability.'" Doc. 190 at 3. Plaintiff contends that his involvement in an occasional anesthesia procedure, or any other activities he does at the Hospital, do not disqualify him from receiving total disability benefits. *Id.* To resolve this issue and Defendant's motion, the Court must consider whether Plaintiff is totally or residually disabled.[5]

### a. The Meaning of Total Disability.

In interpreting a total disability provision found in an occupational disability policy, this Court previously adopted the "substantial performance test." *See Cheney v. U.S. Life Ins.*, No. CV-17-0004-PHX-DGC, 2019 WL 367905, at *5-6 (D. Ariz. Jan. 30, 2019). Under this test, "to recover from an occupational disability policy, the disability need 'be such as to render (the insured) unable to perform the substantial and material acts of his own occupation in the usual or customary way.'" *Radkowsky v. Provident Life & Acc. Ins.*, 993 P.2d 1074, 1076 (Ariz. Ct. App. 1999) (quoting *Nystrom v. Mass. Cas. Ins.*, 713 P.2d 1266 (Ariz. Ct. App. 1986)). In evaluating disability, "courts consistently have focused upon the unique and specific tasks of the insured's occupation to determine whether he no longer can engage in his profession in the usual or customary way." *Id.* at 1076 n.1.

*Nystrom* and *Radkowsky* do not require the insured to be totally helpless, even where the Policy language broadly requires a "complete inability" to perform job duties. *See* 1 Couch on Insurance § 147:110 (citing *Nystrom*, 713 P.2d at 1240). Rather, a disability can

---

Doc. 190 at 3. These cases all deal with contexts wholly inapplicable here. *See, e.g.*, *In re Cubic Energy, Inc.*, 587 B.R. 849, 857 (D. Del. 2018) (bankruptcy court declining to offer an advisory opinion interpreting a reorganizational plan because to do so would have no valid legal effect on the parties before it).

[5] Although Defendant previously determined Plaintiff to be totally disabled, this determination was based on information obtained prior to this litigation. *See* Doc. 186-4 at 21, 24. Plaintiff cites, and the Court has found, no case law prohibiting an insurer from changing its disability determination if new evidence comes to light through litigation.

- 11 -

exist when a practicing doctor can no longer perform specific tasks of his practice, even if he can still perform more general medical duties. *See Radkowksy*, 993 P.2d at 1076 n.1 (citing cases).

### b. Plaintiff's Occupation.

The Policy at issue is an occupational disability policy which "protect[s] against the loss of the ability to perform the principal duties of a particular occupation, not a particular position." *Held v. RiverSource Life Ins.*, 2013 WL 4543891, at *7 (D. Ariz. Aug. 28, 2013). The Policy defines occupation as one "in which you are regularly engaged at the time you become disabled. If your occupation is limited to a recognized specialty within the scope of your degree or license, we will deem your specialty to be your occupation." Doc. 184-1 at 13. The Court therefore must determine what Plaintiff's occupation was at the time he became disabled on August 17, 2015.

Defendant argues that, in addition to his clinical activities, Plaintiff's occupation included the executive duties he occasionally performed at the Hospital. Doc. 183 at 11. Defendant contends that Plaintiff's "occupation is comprised of multiple substantial and material duties." Doc. 194 at 4 n.4. Plaintiff counters that his only occupation was a clinical anesthesiologist. Doc. 190 at 4, 12.

The Court does not agree with Defendant. The Policy defines an occupation as one "in which you are *regularly engaged* at the time you become disabled." Doc. 184-1 at 13 (emphasis added).[6] Plaintiff's work as the Hospital's CMO cannot be said to be work Plaintiff regularly engaged in, as he averaged only two hours per month, mostly reading emails, with an average monthly compensation of $200. Doc. 191-1 ¶ 6. Similarly, as the CQI chair, Plaintiff spent no more than six hours per month reviewing charts and attending meetings, for which he was not compensated. Doc. 184-1 at 57. The same is true for Plaintiff's work as chair of the anesthesia department, for which he was not compensated

---

[6] "Occupation" is generally defined, in part, as: "[a]n activity or pursuit in which a person engages; esp., a person's usual or principal work or business." Occupation, Black's Law Dictionary (11th ed. 2019).

- 12 -

and in which he dealt with administrative tasks relating to PAS. *Id.* at 56. This all is in contrast to Plaintiff's work as a clinical anesthesiologist, which entailed ten to twelve-hour days in operating rooms, often without meaningful breaks between procedures. Doc. 186-1 at 3. Defendant does not meaningfully refute this.

The Court concludes that Plaintiff's occupation, in which he regularly engaged, as defined in the Policy and based on Plaintiff's circumstances, was that of a clinical anesthesiologist. *See Wirries v. Reliance Standard Life Ins.*, 247 F. App'x 870, 871 (9th Cir. 2007) (noting that the policy's "regular occupation" term "unambiguously refers to the *usual work* that the insured performed immediately before the onset of disability.") (emphasis added).

### c. Substantial Performance Test.

Under the substantial performance test, the Court must determine whether Plaintiff was unable to perform the substantial and material duties of a clinical anesthesiologist in his usual or customary way after August 17, 2015. On this issue, the evidence presented by the parties creates a question of fact that cannot be resolved by summary judgment.

The parties do not precisely define the substantial and material duties of a clinical anesthesiologist. At the very least, however, Plaintiff was responsible for anesthetizing patients and monitoring their vital signs for breathing and other critical bodily functions. Doc. 190 at 13. As Plaintiff's medical expert opined, this frequently includes the use of both arms, twisting of the head, and bending of the back. Doc. 191-3 at 12. Plaintiff's is also required to stand up ten to twelve hours a day, and lift and move heavy medical equipment and patients. Doc. 190 at 13. In fact, moving a patient from the operating table to an adjacent hospital bed was the cause of Plaintiff's injury on August 17, 2015. Doc. 47-3 at 21-22. There was nothing unordinary about this maneuver. *Id.* at 28. The question is thus whether Plaintiff is able to do these tasks in the usual or customary way after his injury.

Defendant argues that Plaintiff can, and has continued to, work long as a clinical anesthesiologist. Defendant points to a number of instances where Plaintiff "continued to

render and provide coverage for anesthesia services in the operating room and pain clinic at the Hospital, and, for a limited period, in Utah," following his injury:

- providing anesthesia services in the operating room for four hours right after Plaintiff's injury;
- providing anesthesia services for six surgeries and six procedures in the days after Plaintiff's injury;
- providing coverage for anesthesia services from noon on August 29 until noon on August 30, 2015;
- providing coverage for anesthesia services on 12 days out of 30 in September 2015;
- performing anesthesia services in October 2015, including on the date of his interview with Defendant, where he reported that he had not worked since his injury; and
- providing coverage for anesthesia at the Hospital through January 14, 2016.

*Id.* Defendant also highlights a number of instances where Plaintiff provided anesthesia services after he underwent back surgeries in January 2015 and April 2016. *Id.* at 10-12.

Plaintiff does not dispute that he worked after his injury, but argues that he nonetheless is unable to do the substantial and material duties of his occupation. Doc. 190 at 9. Plaintiff's experts opine that he no longer can perform the substantial and material duties of a clinical anesthesiologist. Docs. 52-7 at 3. Dr. Robert Rovner, who reviewed Plaintiff's medical records, states:

> (a) [Plaintiff] is not likely to be able to engage in any of the substantial or material activities that anesthesiologists typically engage in when administering anesthetics during surgical procedures, and (b) [Plaintiff's] current condition . . . will not resolve itself or improve without significant medical intervention, such as surgery, and even with such intervention, the outcome would be uncertain.

Doc. 52-9 at 3; *see also* Doc. 191-3 at 5 (Plaintiff is "incapable of returning to work on the basis of the specific injury[.]"). Plaintiff further contends that he cannot perform his duties

in the ordinary course of business because a nurse was present at each of the procedures where he was listed as the anesthesiologist and helped him perform the tasks that he was unable to execute because of his injury. Doc. 191-1 ¶ 13-15.

Plaintiff argues that the billing records Defendant cites are inaccurate and unreliable in identifying who provided anesthesiology services. Doc. 190 at 9. He notes that even on the dates identifying him as the assigned anesthesiologist, the records do not indicate what tasks he performed or whether nurses assisted him with those tasks.

This evidence raises a question of fact as to whether Plaintiff is able to substantially perform the material duties of a clinical anesthesiologist. The Court therefore will deny both parties' motions for summary judgment on whether Plaintiff is totally or residually disabled.[7]

### 2. Bad Faith.

Arizona law "implies a covenant of good faith and fair dealing in every contract." *Rawlings v. Apodaca*, 726 P.2d 565, 569 (Ariz. 1986). The accompanying duty requires "that neither party . . . act to impair the right of the other to receive the benefits which flow from their . . . contractual relationship." *Id.* An insurer acts in bad faith where it "intentionally denies, fails to process or pay a claim without a reasonable basis." *Prieto v. Paul Revere Life Ins.*, 354 F.3d 1005, 1009 (9th Cir. 2004) (quoting *Noble v. Nat'l Am. Life Ins.*, 624 P.2d 866, 868 (Ariz. 1981)). The inquiry on summary judgment is "whether there is sufficient evidence from which reasonable jurors could conclude that in the investigation, evaluation, and processing of the claim, the insurer acted unreasonably and either knew or was conscious of the fact that its conduct was unreasonable." *Id.* at 1010 (quoting *Zilisch v. State Farm Mut. Auto. Ins.*, 995 P.2d 276, 280 (Ariz. 2000)).

---

[7] Defendant also claims that Plaintiff is residually disabled because he continues to receive more than 20% of his pre-disability earnings. Doc. 183 at 12. Even if true, there is still a question of fact as to whether Plaintiff meets the first prong of the Policy to be residually disabled: whether he is able do one or more of his substantial and material daily business duties or whether he is able to do his usual daily business duties for as much time as it would normally take him. *See* Doc. 184-1 at 17.

- 15 -

Defendant argues that it had a reasonable basis to conclude that Plaintiff's claim arose out of a sickness – the original basis for this litigation. Doc. 183 at 16-17. Plaintiff responds that Defendant's overall handling of Plaintiff's claim has not been reasonable and falls short of the standard of care in the insurance industry. Doc. 190 at 16.

Plaintiff's insurance expert, Charles Miller, claims that Defendant's handling of Plaintiff's claim was "repeatedly contrary to insurance industry claims handling standards, as [Defendant] sought to look for facts or opinions, which, in its view, supported denial of [Plaintiff's] claim for full disability benefits, rather than investigate and look for facts which would support [Plaintiff's] claim." Doc. 191-19 at 6. Miller specifically states four instances of bad faith: Defendant failed to conduct a thorough and timely investigation of Plaintiff's claim (*id.* at 18); Defendant failed to properly evaluate and timely pay Plaintiff's loss (*id.* at 29); Defendant improperly denied Plaintiff's claims (*id.* at 37); and Defendant's contention that Plaintiff is only eligible for residual benefits is contrary to industry claims handling standards (*id.* at 52).

Defendant provides no contrary expert opinion. It argues that it had Plaintiff's medical records reviewed by a registered nurse and two physicians, whose investigation indicated that Plaintiff's disability resulted from his longstanding degenerative spine condition as opposed to his injury on August 17, 2015. Doc. 183 at 17. But these assertions create a question of fact on whether Defendant acted in bad faith in its handling of the claim. The Court will deny Defendant's motion as to Plaintiff's bad faith claim.

### 3. Punitive Damages.

"[P]unitive damages may not be awarded in a bad faith tort case unless the evidence reflects 'something more' than the conduct necessary to establish the tort." *Rawlings*, 726 P.2d at 577 (citing *Farr v. Transamerica Occidental Life Ins.*, 699 P.2d 376, 383 (Ariz. Ct. App. 1984)). Plaintiff must show that "the evil hand that unjustifiably damaged the objectives sought to be reached by the insurance contract was guided by an evil mind which either consciously sought to damage [Plaintiff] or acted intentionally, knowing that its conduct was likely to cause unjustified, significant damage to [Plaintiff]." *Id.* Plaintiff

must prove Defendant's evil mind by clear and convincing evidence. *See Nardelli v. Metro. Grp. Prop. & Cas. Ins.*, 277 P.3d 789, 801 (Ariz. Ct. App. 2012) (citing *Linthicum v. Nationwide Life Ins.*, 723 P.2d 675, 681 (Ariz. 1986)); *see also Anderson*, 477 U.S. at 254 (the substantive evidentiary burden of proof – including the heightened clear and convincing burden – applies on summary judgment).

Even if Plaintiff eventually is able to succeed on his bad faith claim, he has failed to present facts from which a reasonable jury could find the "something more" required for punitive damages – that Defendant's actions were the result of an "evil mind." *Rawlings*, 726 P.2d at 577-78; *see Linthicum*, 723 P.2d at 681 (explaining that punitive damages are recoverable in a bad faith action only where "the defendant's conduct is 'aggravated, outrageous, malicious or fraudulent' combined with an evil mind as evidenced by a showing that the defendant was consciously aware of the needs and rights of the insured and nevertheless, ignored its obligations"); *Gurule v. Ill. Mut. Life & Cas.*, 734 P.2d 85, 86 (Ariz. 1987) (noting that punitive damages are warranted "only if the defendant's conduct or motive involves 'some element of outrage similar to that usually found in crime'" (citations omitted)). This is particularly true when Plaintiff's clear and convincing burden of proof is considered. *See Anderson*, 477 U.S. at 254. Aside from arguing bad faith, Plaintiff has presented no evidence to show Defendant acted in an "aggravated, outrageous, malicious or fraudulent" manner. *See Linthicum*, 723 P.2d at 681. The Court will grant summary judgment in favor of Defendant on the request for punitive damages.

**B.     Plaintiff's Motion.**

Plaintiff moves for partial summary judgment and requests a declaratory judgment that he is totally disabled. Doc. 185 at 2. As discussed above, the Court cannot determine, as a matter of undisputed fact, whether Plaintiff is or is not totally disabled. The Court will deny Plaintiff's motion for partial summary judgment.

**IT IS ORDERED:**

1. Defendant's motion for summary judgment (Doc. 183) is **denied** as to the breach of contract and bad faith claims, and **granted** as to punitive damages.

1. 2. Plaintiff's motion for partial summary judgment (Doc. 185) is **denied**.
2. 3. Plaintiff's Rule 56(d) motion (Doc. 190) is **denied**.
3. 4. Defendant's motion to strike (Doc. 194) is **granted in part and denied in part** as set forth above.
4. 5. Plaintiff's motion for alternative relief (Doc. 197) is **denied**.
5. 6. The Court will hold a telephonic hearing on **February 21, 2020 at 2:30 PM** to schedule a final pretrial conference and trial in this matter. Counsel who will be trying the case shall participate in the telephonic hearing. Counsel for Plaintiff shall initiate a conference call to include counsel for Defendant and the Court. If a dial-in number is to be used, counsel for Plaintiff shall provide the dial-in information to counsel for Defendant and the Court no later than **12:00 noon on February 19, 2020**.

Dated this 3rd day of February, 2020.

*David G. Campbell*

David G. Campbell
Senior United States District Judge