**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Thomas Scott Wood, | No. CV-17-02330-PHX-DGC |
| Plaintiff, | **ORDER** |
| v. | |
| Provident Life and Accident Insurance Company, | |
| Defendant. | |

Plaintiff Thomas Wood alleges that Defendant Provident Life and Accident Insurance Company breached the parties' contract by withholding total disability insurance benefits.  Doc. 1-1 at 5-12.  The Court previously held that Plaintiff suffered an "accidental bodily injury," rather than a mere sickness, and could qualify for life-long disability benefits if he is totally disabled.  Doc. 77.  The Court later held that Plaintiff's occupation was clinical anesthesiologist.  Doc. 203 at 13.  The Court denied summary judgment on whether Plaintiff is totally or residually disabled, finding a question of fact on whether Plaintiff is unable to perform the substantial and material duties of a clinical anesthesiologist.  *Id.* at 15.

In preparation for trial, the parties have filed several motions in limine ("MILs").  This order will address those motions.

## 1.    Defendant's MIL 1 (Doc. 245).

Defendant seeks to exclude the testimony of several witnesses on the basis of untimely disclosure.  The Court will address each witness.

1      <u>Karen Haigh</u>:  The Court stands by its previous rulings on Ms. Haigh.  Doc. 235.

2      <u>Dr. Barbara Rizzardi</u>:  Rule 37(c)(1) provides that a party that fails to disclose

3 information required by Rule 26(a) "is not allowed to use that information . . . at a trial,

4 unless the failure was substantially justified or harmless."  The burden is on the party facing

5 the sanction to demonstrate that the failure to comply is substantially justified or harmless.

6 *Torres v. City of L.A.*, 548 F.3d 1197, 1213 (9th Cir. 2008).

7      The fact discovery deadline was Friday, February 8, 2019 (Doc. 85 at 1-2), and Dr.

8 Rizzardi, who is Plaintiff's wife, was not disclosed as a witness until March 29, 2019.

9 Plaintiff claims that she was known to Defendant through various items of information

10 revealed in the case, but a party's knowledge of an individual's factual involvement in a

11 case is far different from knowledge that the individual will testify at trial.  Plaintiff does

12 not dispute that her role as a witness was not disclosed until well after the disclosure

13 deadline.

14      Plaintiff also argues that the need for Dr. Rizzardi did not appear until Plaintiff

15 began experiencing symptoms of stress in early 2019, which he attributes to this lawsuit.

16 And yet Plaintiff has identified Dr. Rizzardi to testify about more than this late-developing

17 stress, including his general health and his inability to work as an anesthesiologist.

18 Doc. 272-1 at 15.  Late disclosure with respect to these longstanding issues is not

19 substantially justified or harmless, and the Court will grant Defendant's motion with

20 respect to them.  Dr. Rizzardi's late disclosure is substantially justified with respect to the

21 endoscopy performed in March 2019 – information that was not available by the discovery

22 cut-off date.  Dr. Rizzardi's testimony will be limited at trial to the allegedly stress-related

23 health issues surrounding the endoscopy, if the Court determines such testimony is

24 otherwise admissible.

25      <u>Jennifer Sullivan and Kimberly Heatwole</u>:  Plaintiff contends that the late disclosure

26 of these witnesses in May 2019 was necessary in light of the deposition of Kimberly

27 Barefoot on March 14, 2019, which concerned various alleged errors in the Page hospital

28

1
2
billing records.  Defendant should be prepared to address this argument at the final pretrial conference, and the Court will rule after the conference.

3
4
5
6
7
8
9
Mike Dagley and Alan Lovejoy:  Defendant contends that these witnesses were disclosed on the discovery deadline – February 8, 2019 – but not until one hour and 12 minutes after the "close of business."  Doc. 245 at 2.  But the relevant Case Management Order did not require disclosure by the close of business (Doc. 85 at 2), and striking witnesses on the basis of a one-hour delay in years-long litigation would be a hyper-technical and unduly harsh application of the rules.  Defendant's motion is denied with respect to Dagley and Lovejoy.

10
**2.	Defendant's MIL 2 (Doc. 246).**

11
12
Defendant seeks to exclude six categories of documents on the basis of untimely disclosure.  The Court will address each category.

13
14
15
16
17
18
19
March 14, 2019 email: Plaintiff explains that this email was sent the day of Kimberly Barefoot's deposition, after she testified that Banner billing records were accurate and that Plaintiff should notify her if there were any inaccuracies.  The email, which was sent by a paralegal to Plaintiff's counsel, identifies purported inaccuracies.  The Court concludes that disclosure of the email on the date it was created was substantially justified – it could not have been disclosed earlier.  The Court will not preclude it on the basis of untimely disclosure if it otherwise is admissible.

20
21
22
23
Endoscopy documents:  The Court will deny Defendant's motion on the same basis that it denied Defendant's motion on a portion of Dr. Rizzardi's testimony.  Disclosure of the documents shortly after they were created was substantially justified.  The Court will not preclude them on the basis of untimely disclosure if they otherwise are admissible.

24
25
26
Page Anesthesia Tax Returns:  Defendant contends that these records became available to him only shortly before they were disclosed on February 25, 2021.  Defendant shall be prepared to address this argument at the final pretrial conference.

27
28

1        Termination Notice Letter:  Disclosure of this letter shortly after it was created was

2    substantially justified.  The Court will not preclude the letter on the basis of untimely

3    disclosure if it otherwise is admissible.

4        Text messages:  Disclosure of the text messages shortly after they were created was

5    substantially justified.  The Court will not preclude them on the basis of untimely disclosure

6    if they otherwise are admissible.

7        May 12, 2020 letter:  Disclosure of this letter shortly after it was created was

8    substantially justified.  The Court will not preclude the letter on the basis of untimely

9    disclosure if it otherwise is admissible.

10       **3.**        **Defendant's MIL 3 (Doc. 247).**

11       Defendant seeks to exclude three subjects of Plaintiff's testimony on the basis of

12   untimely disclosure.  The Court will address each subject.

13       Defendant claims that Plaintiff did not disclose his reliance on Defendant's total

14   disability determination in making decisions about the future of Page Anesthesia.  But

15   Plaintiff notes that this subject was disclosed in a declaration he filed in this case in 2018.

16   *See* Doc. 52-4 ¶ 22.  Defendant's motion will be denied on this subject.

17       Defendant also argues that Plaintiff failed to disclose the effect on Page Anesthesia

18   of his loss of earnings due to his injury.  The motion indicates that this disclosure occurred

19   on the discovery deadline – February 8, 2019 – but not until one hour and 12 minutes after

20   the "close of business."  Doc. 247 at 1.  As noted above, the Court will not preclude this

21   information on the basis of a one-hour delay in a years-long case.  Additionally, Plaintiff

22   notes that this information was disclosed in his timely rebuttal expert report.  Defendant's

23   motion will be denied on this subject.

24       Plaintiff argues that the third subject – a statement by the western region CMO –

25   was not made until after the discovery deadline, but does not state when it was made in

26   relation to Plaintiff's disclosure.  The parties should be prepared to address this issue at

27   trial.

28   / / /

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**4.      Defendant's MIL 4 (Doc. 248).**

Defendant seeks to preclude Plaintiff from presenting evidence of Defendant's litigation conduct in support of Plaintiff's bad faith claim.  Plaintiff asserts the right to present (a) evidence of unreasonable settlement offers, (b) failure to evaluate information related to Plaintiff's disability, and (c) seeking a court ruling on residual disability "despite evidence to the contrary, including the opinions of Defendant's medical specialists."  Doc. 248 at 2.

For the first category – evidence of Defendant's settlement positions – Plaintiff does not explain why the disclosure was untimely or substantially justified, and the Court cannot conclude that it was harmless.  The Court will grant Defendant's motion with respect to Defendant's settlement positions.

The second category – failure to evaluate information related to Plaintiff's disability – is too general for a decision on this motion.  Much of the bad faith case is about Defendant's alleged failure to properly evaluate relevant information.

The third category – Plaintiff's assertion that Defendant wrongly decided to leave the determination of residual disability to the Court – was disclosed in the deposition of Plaintiff's bad faith expert.  *See* Doc. 268-2 at 24-25.  It was also apparent in the Rule 30(b)(6) deposition Plaintiff sought on this issue.  There was no untimely disclosure.

"In Arizona, an insurer's contractual duty of good faith does not terminate when the parties become litigation adversaries.  An insurer has continuing claims-handling responsibilities even while coverage litigation proceeds."  *Safety Dynamics Inc. v. Gen. Star Indem. Co.*, No. CV-09-00695-TUC-CKJ, 2015 WL 10714048, at *12 (D. Ariz. Feb. 6, 2015) (citation omitted).  But there is a difference between a duty of continuing good faith and litigation conduct.  "Several out-of-state courts other than those in Arizona have held that the insurer's conduct in the coverage litigation should not be the basis of a bad-faith claim and that the relevant inquiry is the insurer's decisions and actions at the time it made the decision to deny coverage."  *Id.* at *11 (citation omitted).

- 5 -

1    With respect to the second and third categories discussed above, the Court will need

2    to make line-drawing decisions at trial.  The Court will seek to avoid a trial on litigation

3    conduct and tactics – matters that are within the control of lawyers and the Court – while

4    recognizing Defendant's continuing duty of good faith.  The parties should be prepared to

5    state their positions on this issue at the final pretrial conference, consistent with the Court's

6    discussion of Plaintiff's motion in limine in section 8 below.

7         **5.      Defendant's MIL 5 (Doc. 249).**

8    Defendant seeks to limit the trial testimony of Plaintiff's treating physicians "to

9    opinions formed during the course of their treatment of Plaintiff."  Doc. 249 at 3.  Plaintiff

10   does not oppose Defendant's motion to the extent it seeks only to extend to all of Plaintiff's

11   treating physicians the Court's ruling on treating physicians Huntsman, O'Bray, and

12   Prince, as set forth in Doc. 77 at 7-8.  Because that is the Court's understanding of

13   Defendant's motion, it will be granted.  Because no Rule 26(a)(2)(B) expert reports have

14   been prepared by treating physicians, those physicians may express only those opinions

15   that were formed during the course of their treatment of Plaintiff.  *Id.*

16        **6.      Defendant's MIL 6 (Doc. 250).**

17   Defendant seeks to preclude a supplemental expert report produce by Dr. Rovner in

18   April 2020, a year after the close of discovery.  Plaintiff responds that he was compelled

19   to have Dr. Rovner address Defendant's ever-changing defense in this case.

20   The Court's Second Case Management Order was clear.  The parties were required

21   to provide "full and complete expert disclosures" by the expert disclosure deadlines.

22   Doc. 85 at 2.  The order further stated:

23        As stated in the Advisory Committee Notes to Rule 26 (1993 Amendments),
          expert reports under Rule 26(a)(2)(B) must set forth "the testimony the
24        witness is expected to present during direct examination, together with the
          reasons therefor."  Full and complete disclosures of such testimony are
25        required on the dates set forth above; absent extraordinary circumstances,
          parties will not be permitted to supplement expert reports after these dates.
26

27

28

- 6 -

*Id.* at 3.  The order warned:  "The parties are advised that the Court intends to enforce the deadlines set forth in this Order, and should plan their litigation activities accordingly." *Id.* at 5.

Plaintiff contends that he was required to make the late disclosure because Defendant changed its positions in this case: "first 'sickness' versus 'injury,' then 'residual' versus 'total' disability, and most recently . . . the 'Temporary Exacerbation Defense.'" Doc. 270 at 2.  But Plaintiff notes that this latter defense was asserted in Defendant's January 2018 motion for partial summary judgment – more than a year before the expert disclosure deadline.  *See* Doc. 46 at 15 ("There is no evidence that the lifting event caused any new lesions or that it had any lasting effect on Plaintiff beyond a temporary exacerbation of Plaintiff's already existing conditions. After this temporary exacerbation resolved, only Plaintiff's preexisting conditions remained.").  Plaintiff also notes he began to understand the alleged timing of this defense – that Plaintiff's injury might not have resolved until some time after the August 2015 injury – "[a]s the discovery period was coming to a close[.]"  Doc. 270 at 3.

Thus, Plaintiff had reason to understand the defense before discovery closed, and yet he waited a year after discovery before disclosing the Rovner supplemental report.  The Court cannot conclude that late disclosure was substantially justified.  Nor can it conclude the late disclosure was harmless.  As Defendant notes, its litigation strategy was based in part on the fact that Dr. Rovner did not do an IME (something he eventually did in connection with his supplemental report).  Doc. 250 at 3.  Further, as the Court previously has noted in this case, late expert disclosures generally are prejudicial.  *See* Doc. 203 at 4-5.

The Court will grant Defendant's motion.  Dr. Rovner will be limited to stating opinions contained in his pre-deadline expert reports and his deposition.

**7.     Defendant's MIL 7 (Doc. 251).**

Defendant asks the Court to preclude Plaintiff's insurance expert, Charles Miller, from testifying that Defendant's claims handling practices fell below the standard of care

1    and from commenting on Defendant's claims handling history, particularly a 1994 report

2    from an outside law firm that made recommendations on Defendant's practices.

3        The Court will not preclude Miller from opining that Defendant's conduct in this

4    case fell below the standard of care.  An insurer acts in bad faith where it "intentionally

5    denies, fails to process or pay a claim without a reasonable basis." *Prieto v. Paul Revere*

6    *Life Ins.*, 354 F.3d 1005, 1009 (9th Cir. 2004) (quoting *Noble v. Nat'l Am. Life Ins.*, 624

7    P.2d 866, 868 (Ariz. 1981)).  The jury must consider whether, "in the investigation,

8    evaluation, and processing of the claim, the insurer acted unreasonably and either knew or

9    was conscious of the fact that its conduct was unreasonable." *Id.* at 1010 (quoting *Zilisch*

10   *v. State Farm Mut. Auto. Ins.*, 995 P.2d 276, 280 (Ariz. 2000)).  Miller's testimony that

11   Defendant's conduct fell below the standard of care is relevant to the question of whether

12   it acted unreasonably and knew that it did so.

13       Nor does the Court agree that Miller's testimony on the standard of care is an

14   improper opinion on an ultimate issue of law.  The Ninth Circuit has rejected this very

15   argument. *Hangarter v. Provident Life & Acc. Ins. Co.*, 373 F.3d 998, 1016 (9th Cir. 2004)

16   ("Defendants contend that Caliri's testimony that Defendants failed to comport with

17   industry standards inappropriately reached legal conclusions on the issue of bad faith and

18   improperly instructed the jury on the applicable law.  This argument is unavailing.").

19   Defendant may object at trial if it believes Miller's testimony is straying into improper

20   legal conclusions.

21       Defendant seeks to preclude Miller from testifying about the 1994 law firm report

22   under Rule 404(b).  Plaintiff does not address this rule in its response.  For other act

23   evidence to be admissible under Rule 404(b), "(1) there must be sufficient proof for the

24   jury to find that the defendant committed the other act; (2) the other act must not be too

25   remote in time; (3) the other act must be introduced to prove a material issue in the case;

26   and (4) the other act must, in some cases, be similar to the offense charged." *Duran v. City*

27   *of Maywood*, 221 F.3d 1127, 1132-33 (9th Cir. 2000).  The Court concludes that the 1994

28

1   law firm report is clearly too remote in time to satisfy this rule.  Miller will not be permitted

2   to describe the 1994 report to the jury during his testimony, directly or indirectly.

3              **8.      Plaintiff's MIL (Doc. 257).**

4              Plaintiff "seeks an order barring Provident from presenting at trial any testimony of

5   a corporate representative . . . regarding any conclusions or determinations made by

6   Provident following the filing of the complaint in this action, to the effect that Plaintiff is

7   either 'residually disabled' or not 'totally disabled' for the purpose of Plaintiff's insurance

8   policy, other than testimony that is consistent with the deposition testimony given by

9   Provident's Rule 30(b)(6) designee regarding that subject, Carolyn Daniels."  Doc. 257

10  at 3.

11             Defendant responds by recounting its claim that Plaintiff misled it, and then states:

12             Plaintiff again seeks to reap the benefits of his deception—this time in the
13             form of a stipulation or testimony that Provident Life has not made a decision
               as to whether he is residually disabled, which he will use to establish that
14             Provident Life has handled his claim during the pendency of this litigation in
15             bad faith.  He wants to get a sound bite from Provident Life's corporate
               witness that it never found he was residually disabled, thereby implying that
16             it recognizes he is totally disabled.  This Court should not allow Plaintiff to
17             benefit from his deception in this litigation.  His motion should be denied.

18  Doc. 262 at 3 (footnote omitted).

19             Defendant's response is not helpful.  It does not address the question posed by

20  Plaintiff's motion – whether Defendant intends to present evidence at trial contrary to Ms.

21  Daniels' Rule 30(b)(6) testimony.  Ms. Daniels, who is the claims handler for Plaintiff's

22  file, testified that Defendant has not made a residual disability decision.  Doc. 257-1.

23  Indeed, Defendant confirms this fact in its response to the motion in limine, stating that

24  "Provident Life's claims department *never addressed this issue* because it operated under

25  the misimpression that Plaintiff never returned to work."  Doc. 262 at 3 (emphasis added).

26  Ms. Daniels testified that Defendant originally determined that Plaintiff is totally disabled,

27  now awaits the decision in this case on whether he is totally or residually disabled, and in

28  the meantime is paying Plaintiff total disability benefits.  Doc. 257-1.

Defendant's consistent position in this case has been that its claims department has not determined that Plaintiff is residually disabled.  It opposed a Rule 30(b)(6) deposition on this subject because it had not made an internal decision.  Doc. 171 ("The Court concluded that the company can satisfy its obligation on topic 2 by producing a witness to testify that the company has not decided whether Plaintiff is residually disabled.").  Defendant also took the position that information about its residual disability litigation position is contained in its litigation filings in this case, and that discovery regarding any internal decision on that subject was therefore unnecessary.  Docs. 194 at 11-12; 203 at 2.

Thus, it appears to the Court that Defendant's position has not changed since the testimony of Ms. Daniels – its claims department still has not made a residual disability decision, and Defendant instead is awaiting the outcome of this case where Defendant is contending, through counsel, that Plaintiff is residually disabled.  If this is correct, the Court cannot see why Defendant opposes Plaintiff's position that the testimony of Ms. Daniels should not be contradicted.  On the other hand, it also appears that Plaintiff is taking the position that it is an act of bad faith for an insurance company, through litigation counsel, to take a new position on coverage based on information discovered in litigation.  Plaintiff seems to want to preclude Defendant from asserting in this case that he is residually disabled.

The parties should be prepared to state their positions on these issues during the final pretrial conference.  The Court will decide Plaintiff's motion in limine after that discussion.

**IT IS ORDERED:**

1.    Defendant's MIL 1 (Doc. 245) is **granted in part and denied in part** as set forth above.  The Court will rule on witnesses Sullivan and Heatwole at the final pretrial conference.

2.    Defendant's MIL 2 (Doc. 246) is **granted in part and denied in part** as set forth above.  The Court will rule on the Page Anesthesia tax returns at the final pretrial conference.

1
2
3

    3.      Defendant's MIL 3 (Doc. 247) is **granted in part and denied in part** as set forth above.  The Court will rule on the statement by the western region CMO at the final pretrial conference.

4
5

    4.      Defendant's MIL 4 (Doc. 248) is **granted in part** as set forth above.  The Court will address the remaining issues raised in this motion at the final pretrial conference.

6
7

    5.      Defendant's MIL 5 (Doc. 249) is **granted**.  Treating physicians may express only those opinions that were formed during the course of their treatment of Plaintiff.

8
9

    6.      Defendant's MIL 6 (Doc. 250) is **granted**.  Dr. Rovner is limited to stating opinions contained in his pre-deadline expert reports and his deposition.

10
11
12
13

    7.      Defendant's MIL 7 (Doc. 251) is **granted in part and denied in part** as set forth above.  It is granted with respect to Miller's testimony about the 1994 law firm report, and denied with respect to his opinion that Defendant's conduct fell below the standard of care.

14
15

    8.      Plaintiff's MIL (Doc. 257) will be decided after the discussion at the final pretrial conference.

16

    Dated this 16th day of February, 2021.

David G. Campbell
Senior United States District Judge

- 11 -